```
 1                  UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2
       * * * * * * * * * * * * * * *    )
 3     UNITED STATES OF AMERICA,        )      Criminal Action
                                        )       No. 23-00032
 4                    Plaintiff,        )
                                        )
 5        vs.                           )
                                        )
 6     VICTOR SEAN DENNISON,            )      Washington, D.C.
                                        )      February 21, 2023
 7                    Defendant.        )      9:12 a.m.
                                        )
 8     * * * * * * * * * * * * * * *    )

 9


10                    TRANSCRIPT OF ARRAIGNMENT
              BEFORE THE HONORABLE TREVOR N. McFADDEN
11                  UNITED STATES DISTRICT JUDGE


12


13     APPEARANCES:

14     FOR THE GOVERNMENT:      BRENDAN BALLOU, ESQ.
                                U.S. DEPARTMENT OF JUSTICE
15                              950 Constitution Avenue, Northwest
                                Washington, D.C. 20530
16
                                ELIZABETH N. ERIKSEN, ESQ.
17                              U.S. DEPARTMENT OF JUSTICE
                                1301 New York Avenue
18                              Eighth Floor
                                Washington, D.C. 20005
19

20     FOR THE DEFENDANT:       MICHELLE PETERSON, ESQ.
       (as standby counsel)     OFFICE OF THE FEDERAL PUBLIC
21                                 DEFENDER
                                625 Indiana Avenue, Northwest
22                              Suite 550
                                Washington, D.C. 20004
23


24     FOR PRETRIAL SERVICES:  CHRISTINE SCHUCK

25
```

 1      REPORTED BY:              LISA EDWARDS, RDR, CRR
                                  Official Court Reporter
 2                                United States District Court for the
                                    District of Columbia
 3                                333 Constitution Avenue, Northwest
                                  Room 6706
 4                                Washington, D.C. 20001
                                  (202) 354-3269
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              THE COURTROOM DEPUTY:  Your Honor, this is

2     Criminal Case 23-32, the United States of America versus

3     Victor Sean Dennison.

4              Counsel, please come forward to identify

5     yourselves for the record, starting with the Government.

6              MR. BALLOU:  Good morning, your Honor.  Brendan

7     Ballou with Beth Eriksen.

8              THE COURT:  Good morning, Mr. Ballou.

9              Good morning, Ms. Eriksen.

10             MS. PETERSON:  Good morning, your Honor.  Michelle

11    Peterson from the Federal Public Defender standing in for

12    Mr. Dennison.

13             THE COURT:  Good morning, Ms. Peterson.

14             Could I have the attorneys approach, please.

15             (Whereupon, the Court conferred with counsel off

16    the record.)

17             (Thereupon, the Defendant entered the courtroom

18    and the following proceedings were had:)

19             THE COURT:  Ms. Chaclan, you may call the case.

20             THE COURTROOM DEPUTY:  This is Criminal Case

21    23-32, the United States of America versus Victor Sean

22    Dennison.

23             Counsel, please come forward to identify

24    yourselves for the record, starting with the Government.

25             MR. BALLOU:  Good morning, your Honor.  Brendan
```

1    Ballou, joined by Beth Eriksen.

2              THE COURT:  Good morning, Mr. Ballou.

3         Good morning, Ms. Eriksen.

4              MS. PETERSON:  Good morning, your Honor.  Michelle

5    Peterson.

6              Mr. Dennison advises that he does not wish to have

7    me represent him, that he wishes to represent himself.  But

8    I'm here at the Court's pleasure.

9              THE COURT:  Good morning, Ms. Peterson.

10        Good morning, Mr. Dennison.

11        So, Mr. Dennison, good morning.

12             THE DEFENDANT:  Good morning.

13             THE COURT:  Sir, you've already spent more time in

14   jail than honestly most misdemeanants face or end up getting

15   sentenced to after trial.

16             THE DEFENDANT:  I understand that.

17             THE COURT:  I tell you that because this is

18   your -- in my mind, you're kind of at a crossroads here.

19   Misdemeanors -- obviously, every crime is an important

20   matter.  But misdemeanors are relatively low-level matters.

21             My job is to try to make sure you have your day in

22   court as soon as possible; and frankly, I don't want to have

23   you locked up.  The vast majority of misdemeanants are not

24   locked up pretrial.  But it's very important that you follow

25   my directions, that you -- if I release you -- and I want to

```
1    be able to release you -- that you abide by the release

2    conditions.  And when we have court hearings, you let me run

3    court.  Okay?

4              As I say, you will have your day in court.  You

5    will have your opportunity to tell the jury just about

6    anything you want.  But until that point, my job is to get

7    us to trial in a fair and expeditious manner.  And that's

8    not going to work if you're talking over me, if you're

9    shouting, if you're disobeying my directions.  All right?

10             So I'm warning you now that if you are disruptive

11   in court, in addition to and regardless of these

12   misdemeanors you're facing, you can face immediate contempt

13   violations that will end up putting you in jail just for the

14   contempt, regardless of what happens in your underlying

15   case.

16             So --

17             THE DEFENDANT:  May I --

18             THE COURT:  -- please work with me.  I will give

19   you an opportunity to speak.  But I need to make sure that

20   you're going to listen to what I'm telling you and help me

21   get through to a trial as quickly as possible.

22             THE DEFENDANT:  I just wanted to --

23             THE COURT:  Sir, if you can approach the podium.

24             THE DEFENDANT:  Can you hear me okay?  Oh, wow.

25   That's great.  Thank you for that.
```

```
 1              I want to start just apologizing for us not having

 2      a meeting of minds the other day.  And to be honest, I was

 3      very nervous.  I wasn't feeling -- I don't know -- fully

 4      present.  And I just didn't -- I'm not used to this.

 5              THE COURT:  I understand that.  And, Mr. Dennison,

 6      I want to -- frankly, the first thing I want to discuss is

 7      whether I can release you.  And I intend to do so as long as

 8      I have your word that you're going to come to court when

 9      you're directed to come to court --

10              THE DEFENDANT:  Yeah.

11              THE COURT:  -- and that you're going to abide by

12      my release conditions.

13              THE DEFENDANT:  Yes.  So to address your first

14      question, how can I explain this?  I flew across the country

15      on no money.  I had to get donations from friends to pull it

16      off.  And it happened very last-minute.  I got here the day

17      before.

18              I was preparing this document I wanted to give you

19      the other day, but I guess I was so excited, you know.  I'm

20      trying to learn all this stuff in a very fast manner.  I'm

21      not -- I don't understand all the legalese stuff and I'm

22      just trying to find my way, mostly on my own, but I've had

23      assistance of counsel and, you know, like a next friend-type

24      person.  That's kind of guided me, which has been tremendous

25      help.
```

1          But aside from that, you know, this whole thing is

2     just new to me.  This whole system.  I'm just not familiar

3     with it.  Right?

4          So I am very cooperative, just so you know.  My

5     normal beingness is very -- I don't know -- like I'm a

6     friend to the Court, as far as I'm concerned.  And I am

7     happy to, you know, move the process along however I can.

8          THE COURT:  Great.

9          THE DEFENDANT:  But I do want to submit this

10     document I meant to give you on Friday but I never got

11     around to it, because I think maybe you just got tired of

12     hearing what I was saying, possibly, which I understand.

13          But basically, I've discovered some things that I

14     think are important to bring up at this stage, even, before

15     a trial.  And basically I want to be made whole by -- at the

16     Court's discretion due to some things that I've discovered

17     here.

18          Would you like me to -- is the clerk of the

19     Court -- sorry.  Who's the clerk of Court?

20          THE COURT:  So Ms. Chaclan is the courtroom

21     deputy.  Do you want to hand her something?

22          THE DEFENDANT:  The courtroom deputy is the same

23     thing?  I don't --

24          THE COURT:  What are you trying to do, sir?

25          THE DEFENDANT:  I just wanted to submit this to

 1    her, then.

 2              THE COURT:  So what I --

 3              THE DEFENDANT:  Also, CC you on it or give you a

 4    separate copy.

 5              THE COURT:  So what I'm going to do is ask

 6    Ms. Peterson to file that on the court docket for you.

 7              THE DEFENDANT:  Thank you.

 8              THE COURT:  That way, there will be a record and

 9    the Government will also have a copy of it.

10              THE DEFENDANT:  Okay.  Good.

11              So yeah.  Sorry.  Can I just grab my --

12              THE COURT:  Yes.

13              To the extent you want to make a motion or

14    something like that, sir, there will be a time for that.

15    I'm going to ask you to let me direct how it goes this

16    morning.

17              The first thing I'm asking you, I want to be able

18    to release you on your personal recognizance under the

19    conditions that the magistrate judge had earlier released

20    you.  Are you going to abide by those release conditions?

21              THE DEFENDANT:  The conditions are -- sorry.  What

22    would those be?

23              THE COURT:  So I can read it for you.  It's to

24    submit to supervision by and report for supervision to the

25    Pretrial Services for the Southern District of California;

1    surrender all passports to the Pretrial Services Agency; not

2    obtain a passport or other international travel document;

3    not to possess a firearm, destructive device or other

4    weapons; stay out of the District of Columbia except for

5    court or Pretrial Services business; not use or illegally

6    possess a narcotic drug or other controlled substance;

7    report --

8                    THE DEFENDANT:  Yes.

9                    THE COURT:  I'll read through them and you can

10   tell me if you are willing to abide by these.

11                   THE DEFENDANT:  Yeah.

12                   THE COURT:  Report as soon as possible to the

13   Pretrial Services officer; not use or possess marijuana

14   under any circumstances; clear all warrants and pay fines as

15   directed by the pretrial services office; not enter Mexico;

16   you must advise the Court or Pretrial Services Office in

17   writing of your current home address and phone number and

18   provide any new contact information before making any change

19   of residence; notify Pretrial Services for the Southern

20   District of California in advance of any travel outside of

21   San Diego County, Imperial County in the Central District of

22   California; receive approval from the Court before you

23   travel outside of the continental United States.

24                   Those are the conditions.  Are you willing to

25   abide by those conditions, sir?

1          THE DEFENDANT:  Okay.  So I have abided by them.

2     I've turned in my passport already.  I think that finding

3     work was one of the things originally.  I don't think I

4     heard you say it.

5          THE COURT:  Maybe you're off the hook on that one.

6          THE DEFENDANT:  Okay.

7          THE COURT:  I think it's a great idea to find

8     employment.

9          THE DEFENDANT:  Every time I find work, I find

10    myself not able to do the work.  So hopefully that's not how

11    it's going to continue.

12          But actually I do have a pending job right now.

13          THE COURT:  Great.

14          THE DEFENDANT:  I just need to get out and be able

15    to call him and say, Hey, I am still interested, because

16    Friday it was like he wanted me to look at a contract that

17    he wanted me to sign to come on board, basically being an

18    agent for talents across the country, booking them in gigs

19    and basically taking commissions.

20          But I turned in my passport.  I don't have

21    firearms to do anything with.  I do have, I think, a

22    warrant, a Tennessee driving without a license, I believe.

23          Now, I can show case law that shows that that's

24    not an illegal act.

25          THE COURT:  And especially I know Ms. Peterson is

1    going to be very concerned about you talking about that.

2    I'm just going to ask you to work with Pretrial Services on

3    that.  All right?  We're not here for that.  I'm not --

4              THE DEFENDANT:  Fair enough.  I don't need to air

5    it.  That's fine.

6              Yeah.  So all the rest of that is fine.  Here's my

7    one difficulty, though:  I'm here in D.C. now.  Are we not

8    able to do trial while I'm here?  Is it something I have to

9    schedule?

10             THE COURT:  Not today.

11             THE DEFENDANT:  Fair enough.

12             What are you thinking on that time?

13             THE COURT:  We'll get to that.  I'm happy to move

14   quickly on that.  But part of it is I want to make sure --

15             THE DEFENDANT:  My willingness or whatever, I flew

16   across the country on no funds.  I made it happen to be

17   here.

18             And maybe you didn't realize that I had that

19   situation.  But I tell you, I stayed up all night making

20   this document for you.  And I was very intent on being here

21   not only on time, but early.  And I got derailed by a debit

22   card problem that happened at the last -- literally the last

23   20 minutes before I was leaving.  I was not able to use my

24   ride share and I had to solve it in another way and I ended

25   up taking a taxi.

```
1               THE COURT:  I understand that, sir.  That's fine.
2               Sir, I am going to ask you to write down for
3       Ms. Peterson right now your current address and phone
4       number.  Can you just --
5               THE DEFENDANT:  So you mean in California?
6               THE COURT:  Yes.  Not the D.C. Jail.  Where you
7       intend to go back once I release you.
8               THE DEFENDANT:  Okay.  Sorry.  I don't -- I don't
9       have it memorized.  It's in my phone.  My phone was taken
10      from me.  I'm sorry.
11              THE COURT:  Where have you been staying?
12              THE DEFENDANT:  Basically an RV in a driveway.  It
13      was approved by Pretrial Services.
14              THE COURT:  That's fine.
15              Mr. Ballou, do you have any objection to the
16      Defendant being released on those conditions?
17              MR. BALLOU:  None, your Honor.
18              THE COURT:  So, sir, I do intend to release you.
19              The next thing I want to talk about is
20      representation.  You are currently represented by the
21      Federal Public Defender's service.  They're excellent
22      attorneys.  Frankly, I think you're very lucky to have them.
23      But ultimately, it is your call whether or not -- well, for
24      the most part, if you want to represent yourself, I want to
25      give you that option.
```

```
 1              Do you want to represent yourself, sir?  Or would
 2      you like to have them represent you for free?
 3              THE DEFENDANT:  I mean, I'm interested in
 4      presenting and speaking, declaring my truths, if that's what
 5      you mean.  I am myself.  I'm trying to do it myself.
 6              THE COURT:  At trial, ultimately it is your
 7      decision whether you're representing yourself or whether you
 8      have attorneys representing you, whether you testify or not.
 9      And so regardless, either way, you would have that
10      opportunity to tell the jury your side of the case.  So I
11      don't want you to think that you can only do that if you
12      represent yourself.
13              THE DEFENDANT:  No.  I don't think that.  I'm
14      fully aware of the risks and the implications and whatever.
15      But I would seek, you know, like assistance of counsel
16      outside.  But it wouldn't be -- they wouldn't be here in the
17      courtroom with me at trial.  And I understand that.  I'm
18      perfectly willing and able to communicate my truth.
19              THE COURT:  So it sounds like you want to have
20      standby counsel.  Is that what I'm hearing?
21              THE DEFENDANT:  Yeah.  Like maybe on my own
22      choosing.  Right?
23              THE COURT:  So, sir, I just need to ask you some
24      questions to kind of confirm for the record that you are
25      competent and able to make that decision.
```

```
 1                    THE DEFENDANT:  Yeah.

 2                    THE COURT:  Sir, have you ever studied law?

 3                    THE DEFENDANT:  I am not a legal scholar.  I

 4      haven't studied law.  I have some understanding ,basic law

 5      understanding.

 6                    THE COURT:  That's fine.

 7                    Have you ever represented yourself in a criminal

 8      action?

 9                    THE DEFENDANT:  I have never been in a criminal

10      action.

11                    THE COURT:  So the answer is no.

12                    THE DEFENDANT:  Yeah.  Sure.

13                    Like I said, I want to just clarify.  It's like so

14      you're asking me, like, pro se.  Right?

15                    THE COURT:  Yes.

16                    THE DEFENDANT:  If I'm representing myself?

17                    Okay.  I have maybe a little trouble with the

18      phrasing because I am myself.  How can I represent myself?

19      That's what I'm not sure of.

20                    THE COURT:  So the basic -- think about it this

21      way:  Whether you want to have Ms. Peterson represent you or

22      someone from the Federal Public Defender's Office or whether

23      you are going to proceed --

24                    THE DEFENDANT:  Thank you for clarifying that.

25      That makes it easier for me.  Thank you.
```

```
1              Yeah.  I don't want them to represent me.
2              THE COURT:  So let's just get through these
3    questions.
4              THE DEFENDANT:  Okay.
5              THE COURT:  So, sir, you've been charged with
6    entering and remaining in a restricted building or grounds;
7    disorderly and disruptive conduct in a restricted building
8    or grounds; disorderly conduct in a Capitol building or
9    grounds; and parading, demonstrating or picketing in a
10   Capitol building.
11             Those first two charges carry a maximum of up to
12   one year in prison and the other two carry up to six months
13   in jail.
14             Do you understand that, sir?
15             THE DEFENDANT:  I don't understand that, mainly
16   because, I mean, I was there.
17             THE COURT:  Sir, I'm just asking you to answer my
18   questions.  I don't want you to say anything right now
19   that's going to incriminate you unnecessarily.
20             THE DEFENDANT:  Yeah.  So I'm just saying that I
21   don't understand those charges.  I don't understand the --
22   honestly, the implication of some of this stuff.  I've
23   looked up the words on all of these charges, definitions of
24   words of all of these charges.  And no.  I don't understand
25   them.
```

1         THE COURT:  So putting aside what you may or may

2    not have done, tell me what you don't understand about the

3    charges themselves.

4         THE DEFENDANT:  Well, I mean, the charges

5    themselves, I don't understand why, you know, this is being

6    targeted at me.

7         THE COURT:  So that would be a great reason for

8    you to plead not guilty.  I'm asking in the abstract if you

9    understand the charges.

10         THE DEFENDANT:  Oh, I see.

11         THE COURT:  Like if somebody else was charged with

12    these offenses.  Do you understand -- frankly, do you

13    understand that you face up to one year in prison --

14         THE DEFENDANT:  I do understand that.

15         THE COURT:  -- and six months for the other two?

16         THE DEFENDANT:  Yeah.  Yes.

17         THE COURT:  Sir, do you understand that if you're

18    found guilty of one or more of these crimes, this Court can

19    order the sentences be served consecutively, that is, one

20    after another?

21         THE DEFENDANT:  Sorry.

22         THE COURT:  That would mean you'd face up to three

23    years --

24         THE DEFENDANT:  You said something about prison

25    versus jail.

1          THE COURT:  Yes.  So prison is one year or more.

2  Jail is less than a year.  Don't get hung up on that.  The

3  important thing is while each of -- the first two have one

4  year, the second two have six months.  You potentially could

5  face up to three years' incarceration total.  Do you

6  understand that, sir?

7          THE DEFENDANT:  Yeah.  So I -- like I said, I

8  don't understand these charges.  I don't understand why

9  these charges are addressed to me.

10          I also don't understand the --

11          THE COURT:  Sir, these are all great reasons to

12  have an attorney represent you.

13          THE DEFENDANT:  No, no, no.

14          THE COURT:  I'm trying to figure out --

15          THE DEFENDANT:  So what I'm telling you, regarding

16  the -- it's not that I don't understand the words.  It's

17  that I don't understand the charges.  And I don't understand

18  why my name is in all caps.

19          THE COURT:  That's not the question.

20          THE DEFENDANT:  No, because that is a dead entity.

21  By corporate law, that type of type is designated to dead

22  entities.

23          THE COURT:  Mr. Dennison, that's an argument that

24  you can make at the appropriate time.

25          Right now, we're --

```
1            THE DEFENDANT:  Well, it's appropriate, isn't it?

2            THE COURT:  No.  Not right now.

3            THE DEFENDANT:  Okay.  The document that I

4    submitted the --

5            THE COURT:  Sir, understand, what we're trying to

6    do right now is for me to --

7            THE DEFENDANT:  Schedule the trial and stuff?

8            THE COURT:  No; for me to confirm to myself that

9    you are able to go ahead and speak on your behalf rather

10   than have an attorney speak for you.

11           THE DEFENDANT:  Please.  Stand by.

12           Yeah.

13           THE COURT:  So what I'm hearing right now is

14   making me concerned that you may not be able to speak for

15   yourself.

16           THE DEFENDANT:  I am myself, sir.  I am of a sound

17   mind and competent man.

18           THE COURT:  That's what I'm trying to determine.

19           THE DEFENDANT:  Very high IQ, I might add.

20           THE COURT:  Sir, you may believe that you're

21   competent.  I need to assure myself you're competent.

22   That's -- I'm asking you very basic questions to determine

23   whether or not you are in fact competent.

24           THE DEFENDANT:  Okay.

25           THE COURT:  Do you understand that if you
```

1    represent yourself, you are on your own?  I cannot tell you

2    or even advise you how you should try your case.

3                THE DEFENDANT:  Absolutely.  Of course.

4                THE COURT:  Are you familiar with the Federal

5    Rules of Evidence?

6                THE DEFENDANT:  Say it again.

7                THE COURT:  Are you familiar with the Federal

8    Rules of Evidence?

9                THE DEFENDANT:  The Rules of Evidence?  No.  But I

10   could look that up if I have access to my phones.  Yeah.

11               THE COURT:  Do you understand the Rules of

12   Evidence govern what evidence may or may not be introduced

13   at trial, that in representing yourself you must abide by

14   these very technical rules and they will not be relaxed for

15   your benefit?

16               THE DEFENDANT:  Makes sense.

17               THE COURT:  Are you familiar with the Federal

18   Rules of Criminal Procedure?

19               THE DEFENDANT:  I am not, but I can look it up and

20   I can abide by them.

21               THE COURT:  Great.

22               Do you understand that those rules govern the way

23   a criminal action is tried in federal court, that you are

24   bound by those rules and that they will not be relaxed for

25   your benefit?

1          THE DEFENDANT:  Sure.

2          THE COURT:  Do you understand that there are

3    advisory sentencing guidelines that may have an effect on

4    your sentence if you're found guilty?

5          THE DEFENDANT:  Say it again.

6          THE COURT:  There are advisory sentencing

7    guidelines that --

8          THE DEFENDANT:  Advisory --

9          THE COURT:  -- that may have an effect on your

10   sentence if you are found guilty.

11         THE DEFENDANT:  Advisory sentencing guidelines?

12         THE COURT:  Correct.

13         THE DEFENDANT:  Sorry.  I'm just writing it down.

14   What about that?

15         THE COURT:  That there are advisory sentencing

16   guidelines that may have an effect on your sentence if

17   you're found guilty.

18         THE DEFENDANT:  Okay.  I'm going to have to look

19   that up.  But yeah.  Sure.

20         THE COURT:  That's just fine.

21         Sir, I must advise you that in my opinion a

22   trained attorney would defend you far better than you can

23   defend yourself.  I think it is unwise for you to try to

24   represent yourself.  You're not familiar with the law.

25   You're not familiar with court procedure.  You're not

1    familiar with the Rules of Evidence.  I strongly urge you

2    not to try to represent yourself.

3              Now, in light of the penalty that you might suffer

4    if you are found guilty and in light of the difficulties of

5    representing yourself, do you still desire to represent

6    yourself and to give up your rights to be represented by an

7    attorney?

8              THE DEFENDANT:  I do, yes.

9              THE COURT:  Sir, is your decision entirely

10   voluntary?

11             THE DEFENDANT:  It is.

12             THE COURT:  Mr. Ballou, do you wish to be heard on

13   this?

14             MR. BALLOU:  Your Honor, I think Mr. Dennison's

15   answers give enough basis to decline his motion to proceed

16   *pro se*.  If ultimately you grant his motion, perhaps we

17   could briefly talk about the responsibilities of standby

18   counsel.

19             THE COURT:  So I understand your perspective.

20             I've also looked a little into the case law in a

21   case like this; and I think, notwithstanding the

22   Government's concerns and frankly my concerns, I think the

23   Defendant has knowingly and voluntarily waived his right to

24   counsel.  I will therefore permit the Defendant to represent

25   himself.  I am going to appoint the Federal Public Defender

1    to serve as standby counsel.

2            THE DEFENDANT:  Not to speak on my behalf at the

3    trial, though.  Right?

4            THE COURT:  That's correct.

5            THE DEFENDANT:  But if I need her assistance in

6    looking something up or understanding the terminology,

7    et cetera.

8            THE COURT:  That's correct.

9            THE DEFENDANT:  Okay.

10           THE COURT:  Sir, what we're going to do right now

11   is go ahead and arraign you.

12           Ms. Chaclan?

13           THE DEFENDANT:  Just to be clear, I do have

14   someone else that I want to consult with outside the

15   courtroom.  They may or may not be here during the trial.

16   Right?

17           THE COURT:  That's perfectly fine.

18           I'll say that during the trial, only you and your

19   standby counsel will be at counsel table.  But you're

20   welcome to talk with whoever you want outside of the trial.

21   Does that make sense?

22           THE DEFENDANT:  I think that's fine for me.  Is

23   there another way that it would be if it wasn't that?  Would

24   they not be -- would there not be an assistance of counsel

25   and it would just be me?  Is that not possible?  Or --

1          THE COURT:  So I'm appointing the Federal Public

2     Defender to serve as standby counsel.  So --

3          THE DEFENDANT:  That makes it more comfortable for

4     you because they can explain things, et cetera?

5          THE COURT:  Correct.  Yes.

6          But you get to make the calls.  You're going to be

7     the one speaking.

8          THE DEFENDANT:  Okay.

9          THE COURT:  And you're responsible.

10          THE DEFENDANT:  Good.  Thank you.  That works for

11     me.

12          THE COURT:  Mr. Dennison, please listen to

13     Ms. Chaclan.

14          THE COURTROOM DEPUTY:  May the record reflect the

15     Defendant has received a copy of the information.

16          Victor Sean Dennison, in Criminal Case 23-32, in

17     which you are charged by an information on Count 1, entering

18     and remaining in a restricted building or grounds; Count 2,

19     disorderly and disruptive conduct in a restricted building

20     or grounds; Count 3, disorderly conduct in a Capitol

21     building or grounds; Count 4, parading, demonstrating or

22     picketing in a Capitol building, do you waive the forming

23     reading of the information?  And how do you wish to plead?

24          THE DEFENDANT:  I don't plead.  I speak and

25     declare -- I mean, you know, I'm -- I don't --

```
 1                MS. PETERSON:  Your Honor, I would suggest the
 2     Court enter a plea of not guilty on Mr. Dennison's behalf.
 3                THE DEFENDANT:  Again, she's not speaking on my
 4     behalf.
 5                THE COURT:  I understand.
 6                But --
 7                THE DEFENDANT:  Sorry.  This pleading thing is,
 8     like, you know, I mean, I'm a child of God.  I'm not
 9     pleading.
10                THE COURT:  I understand your point.
11                THE DEFENDANT:  I actually have a clear
12     conscience; in fact, clean hands regarding this whole
13     situation.
14                THE COURT:  Great.
15                Mr. Dennison, I'm going to try to make sure we get
16     you your day in court as quickly as possible.  I'm going to
17     ask you to have a seat at this point.  You'll get another
18     chance to speak.  But I just need to deal with a couple
19     things with the Government now.  So please have a seat.
20                THE DEFENDANT:  Okay.
21                THE COURT:  I'm going to enter a plea of not
22     guilty on the Defendant's behalf.
23                THE DEFENDANT:  I don't consent to that.  I'm
24     sorry.
25                THE COURT:  That's just fine.
```

```
1              THE DEFENDANT:  I don't consent to a not guilty
2    plea.
3              THE COURT:  That's fine.  I understand.
4              THE DEFENDANT:  I don't understand what the
5    marshals are --
6              THE COURT:  Because they want to make sure that
7    you do what I tell you to do.
8              Mr. Ballou, how do you wish to proceed?
9              MR. BALLOU:  Perhaps we could speak briefly, your
10   Honor, about the responsibilities of standby counsel.
11             THE COURT:  Go ahead.
12             MR. BALLOU:  I think there are two things that we
13   would ideally work with standby counsel on.  One is
14   discovery and the second is communication with the
15   Defendant.
16             On discovery, as you're probably familiar with the
17   January 6 cases, each defendant has defendant-specific
18   discovery and then there's a large body of global discovery
19   that are available through several databases.
20             We'd ask that any access to the global discovery
21   be mediated through standby counsel.
22             THE COURT:  Okay.
23             MR. BALLOU:  And on the communication front, as
24   you can see, Mr. Dennison is obviously entitled to represent
25   himself.  But we think it would be more productive for the
```

1    Government, for the Court and ultimately for Mr. Dennison if

2    any communication between himself and the Government be

3    mediated through standby counsel.

4              THE COURT:  I will take those under advisement.

5              Let me speak to Mr. Dennison about those in just a

6    minute.

7              Sir, where are you in terms of discovery?

8              MR. BALLOU:  We're ready to produce discovery

9    expeditiously, as with the other January 6th defendants.

10   We'd ask that a protective order be entered first.  We'd be

11   ready to submit a draft to you shortly.

12             THE COURT:  Great.

13             So how quickly -- my guess is Mr. Dennison is

14   going to want to go to trial quickly.  How quickly are you

15   going to be ready to go to trial?

16             MR. BALLOU:  Quickly, your Honor.  As you

17   mentioned, we think this could be a very short trial.  I'd

18   want to confer with my co-counsel here.  I believe we have

19   availability between April 21st and May 15th, if that's

20   possible for your Honor.

21             THE COURT:  Probably not.

22             Let me see -- how about June 5th?  Are you

23   available on June 5th?

24             MR. BALLOU:  Could I get back to you, your Honor?

25             THE COURT:  Like --

 1              MR. BALLOU:  Right now.  Yes.

 2              It should, your Honor.

 3              THE COURT:  Thank you.

 4              Ms. Peterson, just for the record, the Southern

 5    District of California, that would be counsel, standby

 6    counsel.

 7              MS. PETERSON:  They declined being standby

 8    counsel.  It's a pretty big imposition when they're not

 9    actually running the case.

10              So if the Court would allow, I would like to

11    explore whether Nicole Cubbage, who's one of our -- one of

12    the folks that we've gone to for standby counsel in other

13    cases, she's very familiar with the electronic discovery and

14    is serving as standby counsel for one of the individuals in

15    the Oath Keepers case before Judge Mehta right now.  So I'd

16    like to explore whether she would agree to take the

17    appointment.  If not, our office will handle it.  But I

18    think that might be the best way to do it in the meantime.

19    The Court can appoint us and we'll just move to withdraw and

20    ask the Court to appoint someone else if we're able to find

21    a more appropriate fit.

22              THE COURT:  Thank you.

23              So, Mr. Dennison, if you can approach the podium

24    again, sir.

25              So I want to get your input on a couple of these

```
 1        things.
 2                First, the Government has suggested that your
 3        standby counsel kind of act as a liaison on the discovery.
 4        There's significant amounts of discovery here that frankly I
 5        think it would be tremendously helpful to you to have an
 6        attorney kind of act as the liaison, forward to you the
 7        things that are most relevant to you.  But it's going to be
 8        overwhelming if you just try to receive all of this
 9        yourself.
10                THE DEFENDANT:  You --
11                THE COURT:  Does that make sense to you?
12                THE DEFENDANT:  Do you mean it would be
13        overwhelming in terms of technological transfer of the data?
14                THE COURT:  All of the above.  I think the volume.
15        There's -- the volume is significant.  Secondly, I think
16        there are technological issues just in terms of the software
17        that you need.
18                THE DEFENDANT:  A certain type of software?
19                THE COURT:  Yes.
20                THE DEFENDANT:  It's not like Google Drive or
21        something like this?
22                THE COURT:  Correct.
23                THE DEFENDANT:  Okay.  Interesting.
24                I need more data on that, whether that would be
25        appropriate for me or not.  Is the software specialized
```

1    software that only courts have access to?  Or what do you

2    mean?

3            THE COURT:  I don't know that, sir.  I'm very

4    thankfully out of the loop on all of that.

5            So what I'm going to do is go ahead and direct the

6    Government to at least for now provide discovery to standby

7    counsel.

8            Mr. Dennison, if you're unhappy with this

9    situation, you can re-raise the situation to me later.  But

10   I do think that's probably in your best interest.

11           THE DEFENDANT:  I mean, to be frank, I'd rather

12   have a direct line.  I think that's more appropriate for me

13   if I can receive the data that way, directly.  I just have

14   to look into exactly what technology you're talking about.

15   You know what I mean?

16           THE COURT:  I understand you.  For now, we're

17   going to proceed as I just said.  But once you see what

18   you're getting from standby counsel, if you're unhappy with

19   it, we can discuss it.

20           The second thing is --

21           THE DEFENDANT:  They're not going to be filtering,

22   though, any -- I don't know if that's what you meant --

23   they're going to be a liaison -- are they going to be

24   filtering the data for me?

25           THE COURT:  They serve as the liaison.  As I say,

 1    there's such a large amount of discovery, including a lot

 2    that would have little to no relevance to you, that I think

 3    they would certainly filter it in that sense.

 4              Secondly --

 5              THE DEFENDANT:  Why is there discovery that

 6    doesn't relate to me?  That's what I don't understand.

 7              THE COURT:  Well, the Government cannot

 8    necessarily be sure if it relates to you.  They don't want

 9    to make that decision for you.

10              THE DEFENDANT:  Oh, okay.

11              THE COURT:  But secondly, there is some sensitive

12    data on there that I'm not going to allow you to take just

13    by yourself.  I'd want somebody who's an officer of the

14    Court to kind of help be involved in that process.

15              THE DEFENDANT:  Okay.

16              THE COURT:  So the second thing the Government has

17    suggested is that they interact directly with your standby

18    counsel rather than with you.

19              Are you comfortable with that?

20              THE DEFENDANT:  I mean, I would rather be in the

21    loop and be communicated to at the same time.

22              THE COURT:  I think that makes sense to me.

23              You provide -- do you have an email address?

24              THE DEFENDANT:  An email address?

25              THE COURT:  Yes.

```
 1              THE DEFENDANT:  Yeah.
 2              THE COURT:  Give it to Ms. Peterson and she'll
 3    give it to the Government; and I will direct the Government
 4    to kind of keep you in the loop on those communications.
 5              THE DEFENDANT:  Thank you.
 6              THE COURT:  June 5th:  Does that work for you for
 7    trial, sir?
 8              THE DEFENDANT:  I'm sure that's fine.  It's far
 9    enough out.
10              THE COURT:  So we'll set this for jury trial on
11    June 5th.
12              THE DEFENDANT:  Can I just ask specifically, I
13    have a concern.  Is it Article III of the Constitution judge
14    that's overseeing this?  Or is it you?
15              THE COURT:  I'm sorry.  I don't know -- are you
16    trying to make a motion here?
17              THE DEFENDANT:  I don't know if it is a motion.
18    I'm just asking a question.  Is the judge that's overseeing
19    this trial an --
20              THE COURT:  That's me.
21              THE DEFENDANT:  Are you an Article III of the
22    Constitution for the United States of America judge?
23              THE COURT:  Yes.
24              THE DEFENDANT:  Whose pay has not been diminished?
25    That's like the --
```

1          THE COURT:  Except by the economy, my pay has not

2    been diminished.

3          THE DEFENDANT:  So you haven't had to pay income

4    taxes.  Right?

5          THE COURT:  That's correct, sir.

6          THE DEFENDANT:  Thank you.  I just wanted to

7    verify that.  I thought that was the case.  But thank you.

8          THE COURT:  You're welcome.

9          THE DEFENDANT:  Then the other thing is, the

10   trial, the jury -- I'm not familiar.  Misdemeanors have

11   certain types of juries.  It's a petit jury or is it --

12         THE COURT:  What we'll do is, on the first day,

13   we'll have a venire, that is, a number of people, and we'll

14   select a petit jury.

15         THE DEFENDANT:  Petit.

16         THE COURT:  From that group with your involvement,

17   you and the Government and I will together try to determine

18   appropriate people to sit on the jury.

19         THE DEFENDANT:  So it would be -- the idea is it's

20   going to be a jury of my peers?

21         THE COURT:  Correct.

22         THE DEFENDANT:  I would request -- I would request

23   sovereigns, basically, people who are at least aware that

24   they are sovereigns of whatever state.  It doesn't have to

25   be a certain state.  But since I have to come here to D.C.,

1    I guess it's a little more difficult to get, like, a

2    California sovereign jury or --

3              THE COURT:  That's true.

4              THE DEFENDANT:  -- in Florida, a sovereign jury,

5    because it's D.C.

6              So, you know, I would take that into account for

7    sure.

8              But do you typically -- you wouldn't typically

9    have the jury come in from other states, then?

10             THE COURT:  No.  If you think that this is the

11   wrong venue for the trial, you think it should be held in

12   California, for instance, you're welcome to file that

13   motion.

14             THE DEFENDANT:  Okay.  That's an interesting idea.

15   Would I file that motion now?  Is that the idea?

16             THE COURT:  No.  I'm going to give you a briefing

17   schedule in just a moment.

18             THE DEFENDANT:  Okay.

19             THE COURT:  So I think what I want to do is I

20   recognize that you're from out of state.  I don't want to

21   kind of impose on you to come back.  So I think what we'll

22   do is have a pretrial conference that morning.

23             And we'll just plan to have the jury called later

24   in the day, Michelle, and you and I can talk about that.

25             So we'll do pretrial conference first thing in the

1    morning, so you only need to come once.

2              I would like to set an intermediate status date.

3    For your sake, I'm going to suggest that we do it remotely.

4    But, Mr. Dennison, I want to make sure that if we're doing

5    that, you're not going to be talking over me.  You're going

6    to let me run that status conference.

7              THE DEFENDANT:  In the morning?

8              THE COURT:  No.  I'm going to set a virtual status

9    conference in about a month or two to make sure that

10   everything's on track.

11             THE DEFENDANT:  Sure.  Yes.

12             My main concern or my main question, I guess, is,

13   you know, yeah.  I was basically working in California.  And

14   that was a main hub for me.  I was living in Tijuana with my

15   girlfriend.  That is not possible now.  Right?

16             So why am I going to go back to California to live

17   in the RV?  I could go to Florida to my mom's and stay with

18   her.  It's more comfortable for me to be there, to prepare

19   for this.  I could do that there.  I could work from there.

20             THE COURT:  You want to go to Florida instead?

21             THE DEFENDANT:  It seems to me that that makes the

22   most sense.  You know, I'm considering my whole life plan

23   here right now while this is going on.  And that makes more

24   sense to me to be in a home and a house, not in an RV, where

25   actually my stuff is in danger to some degree.  My musical

1    equipment, et cetera.

2         THE COURT:  Do you know your mother's address?

3         THE DEFENDANT:  It's in my phone, which is taken

4    by the FBI.  If you can get it.  If not, you know, I can

5    just call her and ask her.  I know her number.

6         THE COURT:  So, sir, what I'm going to do --

7         THE DEFENDANT:  It's in Deland, Florida.

8         THE COURT:  I'm fine with that.  I do need to know

9    where you're going to be.

10        So I think this is a great thing to ask

11   Ms. Peterson to help you on.  If you let Ms. Peterson know

12   where you want to stay, she'll file something with me.  I'm

13   fine with you staying in Florida.  We just need to all be on

14   the same page about where you are.  Okay?

15        THE DEFENDANT:  Yeah.  Yeah.  A couple places.  I

16   could either stay with my mom or I have a friend named Jim,

17   who's invited me to stay with him in Tampa.

18        THE COURT:  I need addresses.

19        THE DEFENDANT:  I can get those for you very

20   rapidly.

21        THE COURT:  Okay.  So --

22        THE DEFENDANT:  I do -- by the way, I need my

23   phone that was taken from me on Friday to call these people

24   and work that out.  I'm assuming that that would be part of

25   me leaving here.

```
1              THE COURT:  Yes.  I imagine there's an
2    out-processing where you get your belongings.  I'm not
3    involved in that.
4              Sir, I'll ask you to have a seat.
5              THE DEFENDANT:  Thanks.
6              THE COURT:  How about a 3:00 p.m. status
7    conference on Wednesday, March 15th?
8              Mr. Ballou, does that work for the Government?
9              MR. BALLOU:  Your Honor, I'll be in trial then,
10   but somebody can certainly do it.
11             THE COURT:  Mr. Dennison, does that work for you?
12   This is virtual.  I don't need you to come in person for
13   that.  3:00 on March 15th.
14             THE DEFENDANT:  Normally, in normal circumstances,
15   I would have access to my -- yeah.  Under normal
16   circumstances, I'd have access to my calendar and it would
17   be very easy.  But I don't.  I'm assuming that's probably
18   fine.  I can let her know if not.  But I'm sure it's fine.
19   What day is that on?
20             THE COURT:  A Wednesday.  We're going to set this
21   for a status conference at 3:00 p.m. on March 15th.
22   Actually, I need to move that up to 1:00 p.m.  1:00 p.m. on
23   Wednesday, March 15th.  And that will be virtual.
24             Mr. Dennison, we'll send you a link for it, just
25   the same as we did this last one.
```

1          I think I can wait until then to set the motions

2     schedule.

3          Mr. Ballou, do you have a problem with that?

4          MR. BALLOU:  None, your Honor.

5          THE COURT:  Do you have a motion?

6          MR. BALLOU:  Oh, yes.  Just one last thing.

7          THE COURT:  If you could approach the podium, sir.

8          MR. BALLOU:  Yes, your Honor.

9          If we could toll the Speedy Trial Act from last

10    Friday to the date of trial.

11          THE COURT:  And nothing further from the

12    Government?

13          MR. BALLOU:  Nothing, your Honor.

14          THE COURT:  What's the basis for tolling?

15          MR. BALLOU:  We believe that it's in the interest

16    of justice that we need the time to prepare for an adequate

17    prosecution.

18          THE COURT:  Mr. Dennison, do you wish to be heard

19    on tolling the speedy trial clock until trial?

20          THE DEFENDANT:  Towing [sic] the speedy trial

21    clock.  Could you define that?  Towing the speedy clock?

22          THE COURT:  Ms. Peterson is right there for you.

23          MS. PETERSON:  (Confers with the Defendant

24    privately.)

25          THE DEFENDANT:  So you want to know if I'm going

 1   to go to waiving the speedy trial clock policy?

 2             THE COURT:  Until trial.

 3             THE DEFENDANT:  Until trial?  I think I am,

 4   because I'd rather have more time myself.  So yeah.

 5             THE COURT:  Great.

 6             So I find that the interests of justice outweigh

 7   the interests of the public and the Defendant in a speedy

 8   trial to the extent that I will waive -- I'm not going to do

 9   it retroactively, but from today to the trial date I think

10   it is appropriate to waive the speedy trial clock in light

11   of the need for both parties to prepare for trial.

12             I understand Mr. Dennison already has one set of

13   documents that he would like me to consider.  So I think it

14   is appropriate that we toll the speedy trial clock until

15   then.

16             So just so we're all kind of clear on what we're

17   going to be doing on March 15th, that's going to be -- I

18   want to make sure that you're getting discovery,

19   Mr. Dennison, by then and that you've got good contact with

20   your standby counsel.  What I'll plan to do then is to set a

21   briefing schedule for any motions that either side is going

22   to file.

23             But otherwise, I think we've got our trial date

24   set; we've got a pretrial conference set; and we'll plan to

25   give you your day in court there in June.

```
 1                   Mr. Dennison, please make sure --

 2                   THE DEFENDANT:  Could I have one second, please?

 3                   THE COURT:  Yes.

 4                   THE DEFENDANT:  All right.  So the trial is going

 5         to be June.

 6                   THE COURT:  Correct.

 7                   THE DEFENDANT:  Okay.  We're just checking in on

 8         March 15th to see if we're prepared and everything's ready

 9         to go and we're on schedule, et cetera?

10                   THE COURT:  That's correct.

11                   THE DEFENDANT:  On that video?

12                   THE COURT:  That's correct.

13                   THE DEFENDANT:  Okay.  Thank you.

14                   THE COURT:  Great.

15                   Mr. Dennison, please make sure you're in touch

16         with Ms. Peterson.  And then she may be handing you off to

17         another attorney to assist you.  You're representing

18         yourself, which is just fine.

19                   But they'll be able to be a lot of help to you in

20         terms of getting the discovery and preparing for trial.  So

21         then also right now remember you're restricted to

22         California.  I'm happy to amend that.  We need to know an

23         address or addresses.  Again, Ms. Peterson can assist you

24         with that.  Just file a motion to amend your release

25         conditions.  Okay?
```

1          THE DEFENDANT:  Sounds good.

2          THE COURT:  Thanks, folks.  See you in March.

3          THE DEFENDANT:  Thank you.

4          (Proceedings concluded.)

1                          **<u>CERTIFICATE</u>**

2

3                    I, LISA EDWARDS, RDR, CRR, do hereby

4      certify that the foregoing constitutes a true and accurate

5      transcript of my stenographic notes, and is a full, true,

6      and complete transcript of the proceedings produced to the

7      best of my ability.

8

9

10                   Dated this 29th day of May, 2024.

11

12              <u>/s/ Lisa Edwards, RDR, CRR</u>
                Official Court Reporter
13              United States District Court for the
                  District of Columbia
14              333 Constitution Avenue, Northwest
                Washington, D.C. 20001
15              (202) 354-3269

16

17

18

19

20

21

22

23

24

25